BEFORE:  HON. JUDITH M. BARZILAY, SENIOR JUDGE

|  |  |  |
|---|---|---|
| RIDDELL, INC., | : | |
| | : | |
| Plaintiff, | : | Court No. 09-00416 |
| | : | Consolidated |
| v. | : | |
| | : | |
| UNITED STATES, | : | |
| | : | |
| Defendant. | : | |
| | : | |

## PLAINTIFF'S MEMORANDUM OF LAW IN SUPPORT OF
## PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT

## Table of Authorities

**Cases**

*American Astral Corp. v. United States* ("*American Astral*"), 62 Cust. Ct. 563 (1969) ............................ 25

*Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242 (1986)................................................................ 7

*Antonio Pompeo v. United States*, 40 Cust. Ct. 362, 366 C.D. 2006 (1958))................................. 22

*Arnold v. United States,* 147 U.S. 494 (1892) ............................................................................ 22

*Automatic Plastic Molding, Inc. v. United States*, 26 CIT 1201 (2002)...................................... 25

*Bauer Nike Hockey USA, Inc. v. United States*, 393 F.3d 1246 (Fed. Cir. 2004).6, 7, 13, 14, 15, 16, 17, 18, 19, 20, 21, 22, 24

*Dynamics Classics, Ltd. v. United States*, 10 CIT 666 (1986) ............................................... 22, 23

*LeMans Corp. v. United States*, 660 F.3d 1311 (Fed. Cir. 2011).............................6, 7, 18, 19, 22, 24

*Pfaff Am. Sales Corp. v. United States*, 16 CIT 1073 (1992) ..................................................... 7

*Rollerblade, Inc.  v. United States*, 282 F.3d 1349 (Fed. Cir. 2002) ...........................6, 16, 27, 28

*United States v. The Carborundum Co.*, 63 CCPA 98 (1976)................................................ 24, 25, 26

**Statutes**

19 U.S.C. § 1515 (1994 & Supp. III & IV) ..................................................................... 6

28 U.S.C. § 1581(a)............................................................................................................. 6

28 U.S.C. §§ 2636(a), 2637(a) (1994 & Supp. IV) ................................................................ 7

**Other Authorities**

Customs Ruling N052472 ................................................................................... 24, 25, 28

Explanatory Note 95.06(B) ....................................................................11, 15, 18, 20, 21, 22

**Rules**

General Rule of Interpretation ("GRI") 3(b) ................................................14, 15, 16, 17

GRI 3(a)........................................................................................................16, 17, 18, 20, 24

**Regulations**

6110.30.3053, HTSUS .................................................................................................. 4

6203.43.4010, HTSUS ............................................................................................ 4, 24

6207.19.9010, HTSUS ................................................................................................. 4

6211 HTSUS ............................................................................................... 14, 15, 17

9506.99.2000, HTSUS ..................................................................... 5, 6, 8, 13, 24, 27, 29

9506.99.25, HTSUS ......................................................................... 6, 15, 16, 17, 18

## Table of Contents

I.      INTRODUCTION ............................................................................................. 4

II.     ISSUE ............................................................................................................... 5

III.    SUMMARY OF ARGUMENT ......................................................................... 6

IV.     ARGUMENT ..................................................................................................... 6

  A.    JURISDICTION ............................................................................................ 6

  B.    STANDARD OF REVIEW ............................................................................ 7

  C.    DESCRIPTION OF MERCHANDISE ........................................................... 7

    1.    Riddell's Products in Issue ........................................................................ 8

  D.    RELATED CASES ....................................................................................... 13

    1.    *Bauer Nike Hockey USA, Inc. v. United States* ....................................... 13

    2.    *LeMans Corporation v. United States* .................................................... 18

  E.    ARGUMENT ................................................................................................ 20

    1.    Riddell's Football Products in Issue are "Requisite" to the Sport of Football ........................... 20

    2.    Riddell's Football Items Are Distinguishable From Wearing Apparel .................... 21

    3.    Riddell's Football Items are More Specifically Described in Heading 9506 ................... 23

    4.    Particular Use of Riddell's Football Items and *Carborundum* Factors .............. 24

    5.    Riddell's Football Items as Accessories or Parts to Football Equipment ................ 26

V.      CONCLUSION ............................................................................................... 29

# I.   **INTRODUCTION**

Plaintiff, Riddell, Inc. ("Riddell"), is before the Court as a result of U.S. Customs and

Border Protection's ("Customs") classification of the merchandise at issue, football pants,

football girdles, football jerseys and scrimmage vests, as "articles of apparel and clothing

accessories," as opposed to classifying each of the subject products as "sports equipment."

Specifically, Customs liquidated the merchandise under the following provisions:

1. Football pants as:

(A)rticles of apparel and clothing accessories, not knitted or crocheted," under subheading
6203.43.4010, Harmonized Tariff Schedule of the United States ("HTSUS"), the provision for
"Men's or boy's suits …; Trousers …: Of synthetic fibers: Other: Other: Other: Other Trousers
and breeches: Men's," at 27.9% ad valorem; and under 6114.30.3060, 14.9% ad valorem, as
"Other garments, knitted or crocheted: … Of man-made fibers: … Other … Other: Men's or
boys;

2. Football girdles as:

(A)rticles of apparel and clothing accessories, not knitted or crocheted," under subheading
6207.19.9010, HTSUS, the provision for "Men's or boy's singlets and other undershirts,
underpants, … Underpants and briefs: Of other textile materials: Other: Of man-made fibers," at
a duty rate of 10.5% ad valorem.

3. Football jerseys as:

(A)rticles of apparel and clothing accessories, knitted or crocheted," under subheading
6110.30.3053, HTSUS, the provision for "Sweaters, pullovers …: Of man-made fibers: Other:
Other: Other: Other: Other," at a duty rate of 32% ad valorem; and

4. Scrimmage vests as:

(A)rticles of apparel and clothing accessories, knitted or crocheted," under subheading
6110.30.3030, HTSUS, the provision for "Sweaters, pullovers …: Of man-made fibers: Other:
Other: Other: Other: Vests, other than sweater vests: Men's or boy's," at a duty rate of 32% ad
valorem.

The imported football pants, football girdles and football jerseys are not in fact "articles

of apparel and clothing accessories." The items must be classified as "Articles and equipment for

general physical exercise, gymnastics, athletics, other sports (including table tennis) or outdoor games, not specified or included elsewhere in this chapter; … Other: Other: Football, soccer and polo articles and equipment, except balls, and parts and accessories thereof" under subheading 9506.99.2000, HTSUS, duty-free.

The merchandise was shipped to the United States from various countries, imported through multiple U.S. Ports. The entries were liquidated by Customs and the liquidations were timely protested, the protests denied, and all duties and fees required have been paid.   A summons challenging the protest denials was timely filed.

The football pants, football girdles and football jerseys were each designed, sold, imported and intended to be used during an organized sport, official league games of football. These products are distinguishable from general articles of apparel based upon their physical characteristics and use and are indispensible to the sport, which could not be played, by rule and by practicality, without use of these items.  As such, the football pants, girdles and jerseys are more properly classified as "sports articles and equipment" under HTSUS Chapter 95.

NOTE:  Plaintiff hereby withdraws its claim regarding the scrimmage vests cited in the complaint and appearing on the denied protests on which this case is based.


## II.   ISSUE

Whether the subject football pants, football girdles and football jerseys are properly classified as sports equipment, or as parts or accessories to sports equipment, or as articles of apparel and clothing accessories under the HTSUS.

III.   **SUMMARY OF ARGUMENT**

The merchandise in this case, football pants, football girdles and football jerseys must be classified under HTSUS 9506, based upon the court in *Bauer Nike Hockey USA, Inc. v. United States*, 393 F.3d 1246 (Fed. Cir. 2004) (*"Bauer Nike"*), where hockey pants used in competitive sports with both removable and non-removable belt and padding were classified by the Court as "sports equipment," classifiable under 9506.99.25, HTSUS **and** under *LeMans Corp. v. United States*, 660 F.3d 1311 (Fed. Cir. 2011) (*"LeMans"*), which differentiated articles of general apparel from articles and equipment for athletics or outdoor sports classified under 9506.99.25, holding that motorcycle jackets and pants were more like, and properly classifiable as, general apparel, and were therefore not *prima facie* classifiable as sports equipment.   Plaintiff Riddell's football pants, football girdles and football jerseys are clearly not general apparel. They are more like the hockey pants in *Bauer Nike* than the motorcycle jackets and pants in *LeMans*, and must therefore be classified accordingly.  In addition, if the football pants, girdles and jerseys are not themselves sports equipment, then they must qualify as parts or accessories to sports equipment under *Rollerblade, Inc. v. United States*, 282 F.3d 1349 (Fed. Cir. 2002), and would also be classified under 9506.99.2000, HTSUS.

IV.   **ARGUMENT**

A.   **JURISDICTION**

This court has jurisdiction pursuant to 28 U.S.C. § 1581(a), in that this civil action is commenced to contest the denial of timely protests filed under Section 515 of the Tariff Act of 1930, as amended.  19 U.S.C. § 1515 (1994 & Supp. III & IV).  Riddell is the importer of record of the merchandise at issue whose protests were denied.   All liquidated duties, charges or

exactions have been paid and the summons was filed within 180 days of the date of mailing of the protest denials. 28 U.S.C. §§ 2636(a), 2637(a) (1994 & Supp. IV).

## B.   STANDARD OF REVIEW

Customs' denial of plaintiff's protests is subject to this court's de novo review under 28 U.S.C. § 2640(a)(1) (1994 & Supp. IV).

Summary judgment is appropriate if "there is no genuine issue as to any material fact and … the moving party is entitled to a judgment as a matter of law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242 (1986) (quoting U.S. Court of Int'l Trade Rule 56(c)). "The party opposing summary judgment may not rest on its pleadings, but must respond with specific facts showing the existence of a genuine issue for trial." *Pfaff Am. Sales Corp. v. United States*, 16 CIT 1073, 1075 (1992) (citations omitted). If the court finds that a material issue of fact remains in dispute, summary judgment must be denied. *See id.*

In this case, summary judgment is appropriate because there are no genuine triable issues of material fact; the issue is whether the merchandise here meet the legal definition of "sports equipment."

## C.   DESCRIPTION OF MERCHANDISE

Three of the four articles in the present case, football pants, football girdles and football jerseys, are in fact designed and intended for protection specifically as official equipment in the organized sport of football, similar in those aspects to the hockey pants in *Bauer Nike*, and dissimilar to the motocross jackets, jerseys and pants in *LeMans*. As such, both *Bauer Nike* and *LeMans* support classification of Riddell's football pants, football girdles and football jerseys under 9506.99.2000, HTSUS. Claims for that classification for the fourth item, scrimmage vests, have been abandoned.

1.   **Riddell's Products in Issue**

   a.   **Football Pants**

Riddell's football pants, as imported, contain four precisely located interior sleeves, specifically designed to hold in location two thigh pads and two knee pads. (Zarin Dec., Exh. A; Exh. E, Skluzacek Depo. p. 66).  Each pair of pants also contains a system designed to hold in place around a football player's waist two hip and one tail pad. (Zarin Dec., Exh. A; Exh. E, Skluzacek Depo. p. 41).  Different models of the Riddell football pants have some variation in design, but all are designed for the same protective purposes for those engaged in the organized sport of football. (Zarin Dec., Exh. E, Skluzacek Depo. pp. 15, 41).  On some models, the system may include snaps around the waist to allow the two hip and one tail pad to snap into place. (Zarin Dec., Exh. A; Exh. E, Skluzacek Depo. p. 41).  On other models, the system may include slots for the incorporation of a belting system designed to hold the hip and tail pads in location. (Zarin Dec., Exh. A; Exh. E, Skluzacek Depo. p. 41).  None of Riddell's pants include outside pockets. (Zarin Dec., Exh. A).  Regardless of model, each pair of football pants includes an open crotch area, laced-closed with heavy strings. (Zarin Dec., Exh. A).  Each includes prominent inside stitching. (Zarin Dec., Exh. A).  Each falls to just below a football player's knee area. (Zarin Dec., Exh. A).  Each includes tight elastic closures at the knee. (Zarin Dec., Exh. A).  The pants are made larger than regular apparel to accommodate the insertion of all of the pads and additional protection articles such as an athletic cup. (Zarin Dec., Exh. A).

The majority of Riddell's sales of football products are made to colleges, high schools and junior high schools, which incorporate organized football within their interscholastic sports programs. (Zarin Dec., Exh. F, Klepek Depo. p. 8). The National Federation of State High School Associations ("NFHS") is the governing body for U.S. High Schools, and promulgates

recommended rules to be adopted and utilized in sports such as football.  (Zarin Dec., Exh. E,

Skluzacek Depo. pp. 23-24).  The NFHS gives suggestions to each state on what type of rules

should be mandated for each sport.  (Zarin Dec., Exh. E, Skluzacek Depo. pp. 24, 61).

The 2006 NFHS Football Rules Book ("Rules Book") has been incorporated within this

brief as Exhibit G[1].  Page three of the Rules Book indicates the following:

> To maintain the sound traditions of this sport, encourage sportsmanship and minimize the
> inherent risk of injury, the National Federation of State High School Associations writes
> playing rules for varsity competition among student-athletes of high school age.

(Zarin Dec., Exh. G).

Rule 1, Section 5 of the Rules Book is titled **"Player Equipment."**  (Zarin Dec., Exh. G,

p. 16 (emphasis added)).  Pertinent portions of Rule 1, Section 5, Article 1 indicate the

following:

> <u>**Mandatory equipment.**</u>   Each player **shall** participate while wearing the following
> pieces of **properly fitted equipment**, which shall be professionally manufactured and
> **not altered to decrease protection**: ... (b) **Hip pads with tailbone protector** ... (d)
> **Knee pads** worn over the knee and under the pants and at least ½ inch thick or 3/8 inch
> thick if made of an approved shock absorbing material. <u>**(e) Pants which cover the knees**</u>
> <u>**and knee pads**</u> ... (h) **Thigh guards** which shall have any hard surface covered with
> material such as closed-cell vinyl foam which has a minimum compression resistance of
> 4-8 pounds for 25 percent compression or other material with equivalent specifications
> and is at least ¼ inch thick on the outside surface and at least 3/8 inch thick on the inside
> surface and the overlap of the edge.

(Zarin Dec., Exh. G, pp. 16 – 19 (emphasis added).

The NFHS clearly considers football pants to be equipment, for league play in the

organized interscholastic sport of football.  (Zarin Dec., Exh. G, p. 18). The NFHS explicitly

states that football pants are considered both "equipment" <u>and</u> "mandatory" as items that MUST

be used by players engaged in the sport. (Zarin Dec., Exh. G, p. 18).  The pants hold and hold in

---

[1] The depositions conducted by the government utilized the 2009 version of the NFHS Football Rule Book.  As the
entries at issue in this case date several years prior to 2009, Plaintiff is submitting as Exhibit G the 2006 NFHS
Rules Book, and references herein are to the 2006 version, which is materially similar to the 2009 NFHS Football
Rule Book.

place knee and thigh pads, and help to hold in place hip and tail pads.  (Zarin Dec., Exh. A).  The pants secure these pads in place to protect each player.  (Zarin Dec., Exh. E, Skluzacek Depo. p. 15).

        b.     **Football Girdles**

Riddell's football girdles are constructed in two primary forms: shells and padded.  (Zarin Dec., Exh. B and C).  All serve the same protective purposes.  (Zarin Dec., Exh. E, Skluzacek Depo. p. 19).  Riddell's football girdle shells are manufactured with textile material, and contain several internal pad sleeves for insertion of hip and tail pads.  (Zarin Dec., Exh. B).  These sleeves ensure that the pads are placed and held in precise locations to protect particular parts of the wearer's body.  (Zarin Dec., Exh. E, Skluzacek Depo. pp. 19-21).

The football girdles are designed to be worn underneath football pants, between the waist and thigh areas.  (Zarin Dec., Exh. E, Skluzacek Depo. pp. 19, 68).  The football girdles are worn by players during the sport of football, and provide a mechanism by which to hold the required hip and tail tads in place.  (Zarin Dec., Exh. E, Skluzacek Depo. p. 19).  Riddell also imports football girdles that do not have accessible interior pad sleeves.  (Zarin Dec., Exh. C).  Instead, those football girdles incorporate sewn-in, permanent, non-removable padding in the hip and tail bone areas.  (Zarin Dec., Exh. C).  Rather than using a snap or belting system incorporated with the football pants, players have the option, through use of Riddell's shelled and padded football girdles, to wear the products at issue here to incorporate required hip and tail pads.  (Zarin Dec., Exh. E, Skluzacek Depo. p. 20).

As with the football pants, the vast majority of Riddell's sales of football girdles are made to high schools in the United States which participate in organized league play of

interscholastic football.  (Zarin Dec., Exh. F, Klepek Depo. pp. 8, 15-16).  The NFHS, again at

Rule 1, Section 5, Article 1 of the Rules Book states:

> **Mandatory equipment.**  Each player **shall** participate while wearing the following
> pieces of **properly fitted equipment**, which shall be professionally manufactured and
> **not altered to decrease protection**: … (b) **Hip pads with tailbone protector** …

(Zarin Dec., Exh. G, pp. 16 – 17 (emphasis added)).

While football girdles are not *specifically* required under the NFHS Rules Book, the hip

and tail pads that the football girdles hold in place <u>are</u> "mandatory equipment." (Zarin Dec., Exh.

G, pp. 16 – 17).  Players can **not** play interscholastic football without the use of the pads that are

incorporated in the football girdles (shelled and padded).  (Zarin Dec., Exh. G, pp. 16 – 17).

Both the shell and padded football girdles are specially designed to secure in location multiple

types of padding that are essential to the protection of the football player while engaged in the

sport of football.  (Zarin Dec., Exh. E, Skluzacek Depo. pp. 19-22).  By their function, the

football girdles are inherently "requisite," consistent with the Explanatory Notes exemplars of

HTSUS 95.06.

As football equipment, the football girdles cannot be considered to be "<u>mere</u> textile"

products because the presence and location of interior pad sleeves for hip and tail pads, or the

inclusion of the pads themselves, is critical toward protecting participants in the organized league

play of interscholastic football.

### c.    Football Jerseys

Riddell's football jerseys are a system designed and intended to hold shoulder pads

snugly to each football player, and to contain the accompanying shoulder pad belts and buckles

on a football player's body.  (Zarin Dec., Exh. E, Skluzacek Depo. pp. 12, 64-65).  The football

jerseys are knit mesh, made of 100% polyester with a V-shaped neck opening, elasticized short

sleeves and hemmed bottom.  (Zarin Dec., Exh. D).  Riddell's jerseys are constructed with extra

room in the shoulders, chest and back to accommodate bulky shoulder pads, which pads are primarily made of hard plastic, that covers and protects a football player's shoulders, upper back and upper chest. (Zarin Dec., Exh. D). In addition, the jerseys have substantial stitching and extra material at the shoulders to maintain the integrity of each jersey during full-contact organized league interscholastic football. (Zarin Dec., Exh. D).

Again, the vast majority of Riddell's sales of football jerseys are made to high schools in the United States which incorporate organized football within their interscholastic sports program. (Zarin Dec., Exh. F, Klepek Depo. pp. 8, 13).

The 2006 NFHS Rules Book, Rule 1, Section 5, Article 1 states:

**Mandatory equipment.** Each player **shall** participate while wearing the following pieces of **properly fitted equipment**, which shall be professionally manufactured and **not altered to decrease protection**: ...

c. **A jersey with clearly visible and legible Arabic numbers 1-99 inclusive on the front and back which shall be long enough to reach the top of the pants and shall be tucked in if longer.**

1. The numbers shall be centered horizontally at least 8 inches and 10 inches high on front and back, respectively, and with bas or strokes approximately 1 ½ inches wide.
2. The color and style of the number shall be the same on the front and back.
3. The body of the number shall be either a color(s) contrasting with the jersey color, or the same solid color(s) as the jersey with a minimum of one border that is at least 1/4 –inch in width of a single solid contrasting color.
4. Players of the opposing teams shall wear jerseys of contrasting colors. Players of the home team shall wear dark jerseys and players of the visiting team shall wear light color jerseys. The visiting team is responsible for avoidance of similarity of colors, but if there is doubt, the referee may require players of the home team to change jerseys.

Note: An American flag, not to exceed 2 by 3 inches, and either a commemorative or memorial patch, not to exceed 4 square inches and with written state association approval, may be worn on the jersey provided neither the flag nor the patch interferes with the visibility of the number.

...

a. **Shoulder pads** and hard surface auxiliary attachments, **which shall be fully covered by a jersey.**

(Zarin Dec., Exh. G, pp. 16 – 17, 19 (emphasis added)).

The NFHS clearly states that football jerseys in and of themselves are equipment, for play in the interscholastic sport of football listing jerseys as both "equipment" and "mandatory." (Zarin Dec., Exh. G, pp. 16-17).  The NFHS requires jerseys to be used integrally with and to hold in place the shoulder pads which are required under Rule 1, Section 5, Article 1 of the NFHA Rules Book.  (Zarin Dec., Exh. E, Skluzacek Depo. pp. 12, 64-65; Exh. G, p. 19).

The NFHS Rules Book requires that football jerseys are made to specific detail not only for protection, but also to ensure fairness in competition in the sport.  (Zarin Dec., Exh. G, pp. 3, 17).

### d.   **Scrimmage Vests**

Following additional review and discovery, plaintiff will not continue its challenge to Customs' classification of the subject scrimmage vests as they provide neither protection, nor are they made specifically for use in football.

## D.   **RELATED CASES**

This case represents the third of what has become a series of recent cases before the U.S. Court of International Trade ("CIT") and the U.S. Court of Appeals for the Federal Circuit ("CAFC") involving classification under 9506.99.2000, HTSUS.

### 1.   *Bauer Nike Hockey USA, Inc. v. United States*

The CAFC in *Bauer Nike* Ruled that Products Need Not be **"Necessary"** to the Playing of a Sport to Qualify As Sports Equipment; and Specifically Noted that Textiles Could be **"Integral"** to the Function as Sports Equipment

The first case was *Bauer Nike Hockey USA, Inc. v. United States* ("*Bauer Nike*").  *Bauer Nike* involved "hockey pants" which provide the same form, fit and function to organized league play of hockey as Riddell's football pants do for organized league football players.  *See Bauer*

*Nike Hockey USA, Inc.*, 393 F.3d at 1248.  In the words of the Court, the *Bauer Nike* hockey

pants were:

> [C]onstructed of two primary components: an exterior nylon or polyester textile "shell"
> and an interior assembly of hard nylon plastic guards and soft polyurethane,
> polyethylene, or polyester foam padding attached to a belt. The internal guards, pads, and
> belt collectively comprise[d] about 80% of the total weight of the hockey pants.    The
> hockey pants help protect the wearer from injury by <u>absorbing and deflecting blows,
> collisions, and flying objects</u> in areas where serious injury may occur from playing
> hockey, including the <u>lower spine, kidneys, tail bone, ribs and lower abdomen, and hips</u>.
> In addition to their protect function, the pants were designed to provide comfort, fit, and
> ventilation to the wearer while playing hockey. It is undisputed that these pants were
> specially designed and intended for use only while playing ice hockey.

*Id.* (internal citations omitted) (emphasis added).

The hockey pants were further described and the court noted that there were <u>two</u> types of

hockey pants. One type had pads permanently attached, while the other had removable pads:

> In Bauer's "True Fit" style of hockey pants, the padding and belt are permanently
> attached to the textile component of the pants....In the second style examined, the
> internal belt and padding in the front, around the thigh, and around the waist are
> removable from the shell or pants, which also had some sewn-in pads.

*Id.* at 1248-49.

Customs had classified the *"True Fit"* style with the permanently attached padding under

HTSUS heading 6211. *See id.* at 1249.  Customs found that the hockey pants without the

permanently affixed pads were composite goods, classifying the entire unit, pants and pads,

according to the essential character that it believed was imparted by the pants, although Customs

found the removable pads to be "sports equipment." *See id.* Customs concluded that the textile

pants component was "sports clothing" and classified the whole unit under HTSUS 6211, based

on its reading of General Rule of Interpretation ("GRI") 3(b).  *See id.*

The Court indicated that:

> Customs determined that the textile shell 'gives the article its form, covers the lower
> portion of the body, holds the pads in place, and itself provides some protection to the
> player.'  From its findings concerning the textile shell, Customs concluded that the goods
> in question were most appropriately classified under Heading 6211.

*Id.*

The CAFC in *Bauer Nike* found that GRI 3(b) was not applicable to either style of hockey pants and centered its analysis on the term "equipment" as it appears in the pertinent HTSUS provision 9506.99 and whether sports equipment must be "necessary," or "requisite" to the particular sport. *See id.* at 1250-51. The Court noted that the CIT "construed the term 'equipment' in subheading 9506.99.25 to mean 'equipment <u>essential</u> to the play of the game, sport, or athletic activity.'" *Id.* at 1250 (emphasis added). The CAFC then specifically noted that the CIT drew support from previous cases and a Customs ruling, which the CIT believed favored the position that only equipment that was "necessary" could be classified in 9506, HTSUS. *See id.* at 1250-51. Here, the CAFC said "[a]gain, the Court of International Trade read in the word 'only' immediately following the word 'includes' when **there appears to be no basis for limiting sports 'equipment' to only sports 'requisites**.'" *Id.* at 1251 (emphasis added).

Accordingly, the CAFC in *Bauer Nike* clearly found that items essential for participation in a sport were not the only types of equipment that fell under 9506, HTSUS. *See id.* The term "requisites" specifically appeared (and still does) in the Explanatory Notes. *See* Explanatory Note 95.06(B). However, the government had wrongly interpreted the term "requisites" as applied in the Explanatory Notes to limit the items that could be included in the term "equipment" to **only** those goods that were "necessary" to play the game. *See id.* at 1250-51.

The CAFC in *Bauer Nike* noted that the term "equipment" **included** articles that are indispensable to the relevant sport or athletic activity, suggesting that if an article was required to play the sport it would clearly fall within the term "sports equipment." *See id.* at 1250 (citing *Rollerblade, Inc.*, 282 F.3d at 1354). The CAFC went further and cited the *plain language* in

Webster's Third New International Dictionary, which defined "'equip' as 'to provide with what is necessary, useful **or** appropriate,'" and indicated that the dictionary definition provided no support for the CIT's conclusion that an item must be necessary, or requisite, to qualify as equipment. *See id.* at 1251 (emphasis added). In addition, the court also said that **because the hockey pants were <u>specially designed and intended for use only while playing ice hockey</u>**, the hockey pants at issue were ***prima facie*** classifiable as "sports equipment" under 9506.99.25, HTSUS. *Id.* In doing so, the CAFC noted that "[n]either the Court of International Trade nor Customs, however, provide any persuasive reason to justify viewing the ice-hockey equipment subheading as referring only to the padding and plates in the subject merchandise **<u>when the textile component plays an integral element in constituting the equipment</u>**." *Id.* at 1252 (emphasis added). Accordingly, the court disagreed with the suggestion that textile products could *never* be included as sports equipment. To the contrary, the court <u>specifically</u> <u>noted</u> that if the "textile component" played an "integral" role in constituting the merchandise, it qualified as "sports equipment" under the HTSUS, under GRI 3(a). *Id.*

The CAFC in *Bauer Nike* also decided that the common use of the terms found in their dictionary definition refuted the government's idea that the Explanatory Notes required that only "requisites" could qualify as sports equipment. After the CAFC decided that the hockey pants were in fact ***prima facie*** classifiable as "sports equipment," it looked to GRIs 3(a) and 3(b):

> [w]hen goods are *prima facie* classifiable under two or more headings, we are to follow the guidelines set forth by GRI 3. GRI 3(a) states that the 'heading which provides the most specific description shall be preferred to headings providing a more general description.' 'Under this rule of relative specificity, a court looks to the provision with requirements that are more difficult to satisfy and that describe the article with the greatest degree of accuracy and certainty." *Len-Ron Mfg. Co., Inc. v. United States*, 334 F. 3d 1304, 1313 (Fed. Cir. 2003) (internal quotes omitted). Assuming the headings do not help narrow the selection, we then look to the subheading which provides the more specific description. *Id.*

*Id.* at 1251-52.

The Court further discounted Customs' use of GRI 3(b):

> In this instance, **Customs erroneously relied on the 'essential character' test from GRI 3(b) to determine the appropriate classification of the hockey pants that had the removable padding and plastic plates**. To properly reach GRI 3(b), we must first determine whether, under GRI 3(a), the '**headings** each refer to part only of the materials or substances contained' in the merchandise. If we agree that the **headings** each refer to 'part only' of the materials contained in the hockey pants, 'those **headings** are to be regarded as equally specific in relation to those goods, even if one of them gives a more complete or precise description of the goods.' GRI 3(a). **Neither the Court of International Trade nor Customs, however, provide any persuasive reason to justify viewing the ice-hockey equipment subheading as referring only to the padding and plates in the subject merchandise when the textile component plays an integral element in constituting the equipment**.

*Id.* at 1252 (emphasis added).

The Court, having recognized that not only were the hockey pants classifiable under 9506, HTSUS, but also *prima facie* classifiable under 6211, concluded that GRI 3(a) resolved the proper classification of the hockey pants in that case. The CAFC said:

> [i]n both **headings**, we must look to the basket provision, 'other garments' and articles and equipment for 'other sports.' Neither provision, however, is more specific than the other. Accordingly, we look to the subheadings. Subheading 6211.33.00 refers to other garments of 'man-made fibers,' whereas subheading 9506.99.25 refers to 'Ice-hockey and field hockey articles and equipment, except balls and skates, and parts and accessories thereof.' It is clear that 'ice-hockey ... articles and equipment,' as provided under subheading 9506.99.25, gives a much more specific description of Bauer's hockey pants than subheading 6211.33.00, which refers quite broadly to other garments of man-made fibers. Having concluded that the subject merchandise is more specifically captured by subheading 9506.99.25 than 6211.33.00, we find Note 1(t) under Section XI, which excludes articles of Chapter 95, leads us to conclude that the merchandise is excluded from classification under Chapter 62. We find no other applicable notes that might otherwise preclude classification of the subject merchandise under subheading 9506.99.25. Accordingly, we must conclude that Bauer's subject merchandise is most appropriately classified under subheading 9506.99.25.

*Id.* at 1252-53 (emphasis added).

In ruling on the hockey pants both with and without permanently attached pads, the CAFC in *Bauer Nike* noted in the context of its GRI 3 analysis, that Customs did not provide "any persuasive reason to justify viewing the ice-hockey equipment subheading as referring *only*

to the padding and plates in the subject merchandise **when the textile component plays an integral element in constituting the equipment**." *Id.* at 1252 (emphasis added).

While this analysis was within the context of GRI 3 and the HTSUS subheadings, it is clear that the CAFC anticipated *other* situations where textile material was in fact "integral" to equipment whether or not the pads are permanently attached. This analysis applies equally at the heading level here, where "equipment," as recognized by the *Bauer Nike* Court and as recognized by the trade is "integral" to the proper function and use of the merchandise.

### 2.    *LeMans Corporation v. United States*

The second of the two recent cases where classification under 9506.99.25 was construed was *LeMans Corp. v. United States ("LeMans")*. The merchandise at issue in the case consisted of motorcycle jerseys, pants and jackets. Customs had classified the items as wearing apparel under Chapters 61 and 62, and not as sports equipment under Chapter 95.

The importer, LeMans, relied heavily on the appellate decision in *Bauer Nike,* arguing that because the merchandise was ostensibly designed exclusively for use in a particular sport, it was *prima facie* classifiable as "sports equipment" under heading 9506 *in addition* to Chapter 61/62. Applying GRI 3(a), the importer said that since heading 9506 more specifically described the merchandise, 9506 was the correct classification. The CIT rejected the importer's argument based on its reading of the Explanatory Note EN 95.06, stating that while the *LeMans* items *arguably* might be *useful or helpful* for motorcross or motorcycle riding in general, EN 95.06 demonstrated that they were not typical of the exemplars for "sports equipment." *LeMans Corp. v. United States*, 675 F. Supp. 2d 1374, 1383-84 (2010).

The CAFC went further in its rejection of the importer's argument "that 'sports equipment' includes either those goods that are 'necessary, useful, or appropriate' for a sport or

those goods that are 'specially designed and intended for use' in a particular sport, even if they might otherwise be wearing apparel." *LeMans Corp.*, 660 F.3d at 1318. The CAFC made clear of the fact that articles specialized or intended for specific purposes such as sports, does not remove them from the being "apparel." *See id.* at 1317. However, our reading of the case is that the CAFC did not specifically find that where the article is required or "indispensible" to play a particular sport that such further inquiry would be necessary. That is, if the article is required and indispensible to playing the particular sport, as opposed to simply being designed for exclusive use in the sport, consistent with the earlier decision in *Bauer Nike*, the article would be *prima facie* classifiable as sports equipment and a GRI 3 (a) comparison with the provision for apparel would be called for.

Since the merchandise in *Bauer Nike* and *LeMans* was not required or indispensible to play particular sports but were merely designed to be necessary, useful or appropriate; a lesser standard, the court felt compelled to further address whether the articles were prima face classifiable as sports equipment.

The first consideration in determining the correct classification in *LeMans* was whether the subject merchandise is "apparel" as described in Chapters 61 and 62. *See id.* at 1316. The CAFC found that *if* the merchandise is completely described and thus properly classified as "apparel" then it cannot be found to also be *prima facie* classifiable as "sports equipment" in Chapter 95. *See id.* at 1317-18. Consequently, the importer's failure to establish that its merchandise was not "apparel" as that term is commonly understood, distinguished it from the hockey pants in *Bauer Nike.* The fact that the *LeMans* merchandise was somewhat specialized and might be intended for use in a sport (it was not clearly established by *LeMans* that the merchandise was intended exclusively for the sport of motocross) did little to persuade the court

that its merchandise was not "apparel." *See id.* at 1317.  Accordingly, *LeMans* did not establish

that its merchandise was *prima facie* classifiable under two or more headings, thus, there was no

need to resort to the application of GRI 3(a)'s "rule of relative specificity." *See id.* at 1318.


E.      **ARGUMENT**

    1.      **Riddell's Football Products in Issue are "Requisite" to the Sport of Football**

As discussed, *supra*, EN 95.06 lists "requisites," *i.e.*, items required to play a particular

sport.  The CAFC in *Bauer Nike* made much of the distinction between "requisite" versus

"necessary, useful, or appropriate." *Bauer Nike Hockey USA, Inc.*, 393 F.3d at 1250-51.  If that

alone were the issue to be decided in this case, it is indisputable that the Riddell football products

in issue <u>are</u> requisite for participation in organized league play of the sport of football.

In discussing the Riddell products in issue we pointed to the NFHS Rules Book's

identification of football pants and football jerseys as "mandatory." (Zarin Dec., Exh. G, pp. 16-

19).  We pointed out that the football girdles, although not specifically listed in the Rules Book,

served to provide protection that is listed and mandatory. *See supra* at 7-8.  Webster's II *New*

*College Dictionary* lists "required" as part of the definitions of both "requisite" and

"mandatory." (*See* Webster's II New College Dictionary 664, 942 (2001)).

The Riddell football products in issue are "mandatory equipment" in and of themselves,

required by rules. (Zarin Dec., Exh. E, Skluzacek Depo. pp. 57-63).  In addition, they are

specially designed to hold in place multiple types of padding that are not otherwise secured to a

player without the pants, jerseys and girdles, as such, the Explanatory Notes exemplars of

HTSUS 95.06.

Their protective features are not just considered "incidental" – rather, the features of these football pants are so inherently protective in nature, that their use is a requisite for each and every player who participates in organized interscholastic leagues that engage in the sport of football.  This is equipment. It cannot be considered "mere apparel."  Their most important features are intended to protect players.  Each of these products incorporates and utilizes textile components which are "integral" to satisfaction of the NFHS rules and the protection of every player. Riddell's football items in issue are well-within the exemplars detailed in Chapter 95, HTSUS, and are *prima facie* classifiable in Chapter 95, HTSUS, consistent with *Bauer Nike* in that they are in and of themselves expressly required to be used in the sport of football and are, with the added pad components, very much like the protective devices described in the Explanatory Notes.

Again, the CAFC in *Bauer Nike* specifically noted situations, in the context of its GRI 3 analysis, that Customs did not "provide any persuasive reason to justify viewing the ice-hockey equipment subheading as referring only to the padding and plates in the subject merchandise **when the textile component plays an integral element in constituting the equipment**." *Bauer Nike Hockey USA, Inc.*, 393 F.3d at 1252 (emphasis added).

As in *Bauer Nike,* at the subheading level, Riddell's **textile components play an "integral element" in constituting the equipment**.

### 2.    Riddell's Football Items Are Distinguishable From Wearing Apparel

Riddell's products, *i.e.*, the football pants, football girdles and football jerseys are inescapably of the *class or kind* that includes the hockey pants described in *Bauer Nike* and when

used integrally with football pads, the exemplars in EN 95.06. They are much less akin to the motorcycle jerseys, jackets and pants described in *LeMans*.

In light of *LeMans*, the subject merchandise, is not only specialized and intended for use exclusively in the organized interscholastic sport of football, but it does <u>not</u> fall within the ordinary meaning of the term "apparel" and is not properly described in the headings and subheadings of Chapters 61 and 62.

The term "wearing apparel" was defined in *Arnold v. United States*, 147 U.S. 494 (1892). The Supreme Court in *Arnold* said that the term, at its broadest, could include all articles which are ordinarily worn and dress in general. *See Dynamics Classics, Ltd. v. United States*, 10 CIT 666, 669 (1986). Riddell's football items are not "ordinarily worn" except by participants in interscholastic league games. A later court held that wearing apparel normally worn for reasons of decency, did NOT include "articles worn as a protection against the hazards of a game, sport or occupation." *Id.* (citing *Antonio Pompeo v. United States*, 40 Cust. Ct. 362, 366 C.D. 2006 (1958)).

Referred to in *LeMans*, the merchandise in issue in *Antonio Pompeo* was "crash helmets." See *LeMans Corp.*, 660 F.3d at 1317. In considering the motorcycle apparel in *LeMans*, the CAFC noted that it did not contain the specialized protective features of the *Antonia Pompeo* crash helmets. *See id.* Apparently, the CAFC in *Bauer Nike* found that the hockey pants <u>did</u> have sufficient protective features to allow them to be classified under Chapter 95 so as to make them *other than* wearing apparel.

In conjunction with an examination of the physical features of the merchandise, in Customs jurisprudence, the ultimate test to determine whether an article is wearing apparel is its

use.  See *Dynamics Classics, Ltd.*, 10 CIT at 667 (citing *Admiral Craft Equipment Corp. v. United States*, 82 Cust. Ct. 162, 164, C.D. 4796 (1979)).  Riddell's football items clearly contain physical characteristics that are much different than features of articles normally associated as "apparel" found in Chapters 61 and 62, HTSUS.  As differentiated from typical "wearing apparel," once again we point out that the pants contain a system to aid in holding hip and tail pads to a player's waist; the pants contain four precisely-located internal sleeves to hold thigh and knee pads in place; the pants include substantial inside stitching; the pants include an open crotch area laced with heavy strings; the pants are designed to fall just below a football player's knees; and each football pant leg includes tight elastic closures at the knees.  *See supra* at 5-6. The reason, of course, that the pants have these important physical features is because these items are specifically designed, sold and intended to be used during the sport of organized league football. (Zarin Dec., Exh. F, Klepek Depo. pp. 8, 13; Exh. E, Skluzacek Depo. pp. 63-72).

The same points can be made regarding the physical properties of the football girdles and football jerseys, as described above, regarding pockets, substantial stitching, etc., as they relate to sales and satisfaction of the NFHS Rules.  (Zarin Dec., Exh. G, pp. 16-19; Exh. F, Klepek Depo. pp. 8, 13, 15-16).  No one would wear Riddell's football pants or football girdles for the typical purposes of attire, and the Riddell football jerseys are specifically designed for participants in the full-contact sport of football.  They are not the "replica" jerseys that fans would purchase and wear, which might be considered "apparel."

3. **Riddell's Football Items are More Specifically Described in Heading 9506**

Once it has been established that, as here, the merchandise is distinguishable from "apparel" as described in Chapters 61 and 62, then pursuant to GRI 3(a) it must be decided which of the competing headings ("apparel" in Chapters 61 and 62 and "sports equipment" in Chapter 95) provides the most specific description. According to General Rule of Interpretation 3(a), "the most specific description shall be preferred to headings providing a more general description." As the CAFC stated in *LeMans*, "'[u]nder the rule of relative specificity, [the court] look[s] to the provision with requirements that are more difficult to satisfy and that describe the article with the greatest degree of accuracy and certainty'" *LeMans Corp.*, 660 F.3d at 1316 (citing *Orlando Food Corp. v. United States*, 140 F.3d 1437, 1441 (Fed.Cir. 1998)).

Consistent with the finding of the CAFC in *Bauer Nike,* it is clear in this case that Riddell's football merchandise is more specifically described by subheading 9506.99.2000. It provides a description as "football...articles and equipment" versus "...other...breeches..." under 6203.43.4010.

### 4.   Particular Use of Riddell's Football Items and *Carborundum* Factors

In Customs Ruling N052472, dated March 6th, 2009, CBP held that football pants under consideration therein, with pads permanently affixed to the pants <u>are</u> properly classifiable as sport equipment under 9506.99.2000, HTSUS. In that ruling, football pants without permanent pads were **not** under consideration. Nonetheless, it is incongruous that the absence of pads in Riddell's merchandise at importation resulted in the Customs classification decisions that led to the protest denials in this case. As discussed below, classification of the subject merchandise must consider the items in conjunction with those components which are integral elements of their use as sports equipment.

In *Automatic Plastic Molding, Inc. v. United States*, 26 CIT 1201, 1203-04 (2002) ("*Automatic*"), the Court looked specifically to the fact that glass jars imported empty were never sold as such to the public, nor was the merchandise sold for any purpose other than that of being used for the packing and conveyance of food. The Court also noted that the subject merchandise was "never displayed or sold in an area where empty glassware, kitchen, or storage containers were sold." *Id.* at 1204. Accordingly, the Court ultimately noted that the principal use reflected the fact that although imported empty, the glass jars were ultimately principally used to store food, and should be classified, accordingly. *See id.* at 1210.

In the same way that the glass jars in *Automatic* were classified with consideration of their use with additional components added food subsequent to importation then, as Customs in N052472 noted that football pants with pads would only be used in the game of football, Riddell's football pants, football girdles and football jerseys must also be classified with consideration of their use in conjunction with those integral components that complete the merchandise and enable them to function for their intended use as sports equipment. They have no other use.

In *American Astral Corp. v. United States* ("*American Astral*"), 62 Cust. Ct. 563, 571 (1969), the court noted that "the statutory designation of 'equipment' is satisfied once it is shown that the article is specially designed for use in the game or sport." Further, in *United States v. The Carborundum Co.*, 63 CCPA 98, 102 (1976), the court noted seven factors to consider whether a product is of the "same class or kind" as that commonly used.[2] Under both the

---

[2] (1) general physical characteristics of the merchandise, (2) the expectation of the ultimate purchaser, (3) the channels, class or kind of trade in which the merchandise moves, (4) the environment of the sale (i.e., accompanying accessories and the manner in which the merchandise is advertised and displayed), (5) the use, if any, in the same manner as merchandise which defines the class, (6) the economic practicality of using the import and (7) recognition in the trade of the use.

*American Astral* and *Carborundum* criteria, Riddell's merchandise are properly classifiable as sports equipment.

Using the *Carborundum* factors, Riddell's football pants, and we argue, other football items in issue, have <u>physical characteristics,</u> that clearly evidence their fitness for use during organized league games of football. The <u>expectations of the ultimate purchasers,</u> *i.e.*, the high schools that make up the bulk of Riddell's sales of these items, are to use them in interscholastic organized league football.  Relative to <u>channels of trade,</u> Riddell's main means of marketing is through its catalogs and its sales representatives to schools and youth groups.  (Zarin Dec., Exh. F, Klepek Depo. pp. 8, 17).  Regarding <u>environment of sale,</u> Riddell sells these items in the same catalogues that it uses to sell pads for the football pants. The catalogue picture include pants with football pads inserted into the pants (i.e., the pants appear "puffed-out" and "ridged," modeled with the pads inserted).  (Zarin Dec., Exh. H).  As to <u>use in the same manner which defines the class,</u> the Riddell's football items are designed and ultimately used in the organized league football games– exactly as football pads are used.  (Zarin Dec., Exh. F, Klepek Depo. p. 8; Exh. E, Skluzacek Depo. pp. 63-72).

> **5.   Riddell's Football Items as Accessories or Parts to Football Equipment**

Finally, if somehow,  Riddell's merchandise were not *prima facie* classifiable as sports equipment in its own right, the fact that the products are principally used with padding following importation into the United States, requires that Riddell's football pants, football girdles and football jerseys must be *prima facie* classifiable consistent with their use as **parts and/or accessories** to sports equipment.

If by reason of the fact that Riddell's football items are not imported with pads inserted, they are not *prima facie* classifiable directly as "[a]rticles and equipment for general physical exercise," they would <u>nevertheless</u> qualify both as "accessories" and as "parts" to football equipment under standards developed by the CAFC.

In *Rollerblade*, the CAFC ruled upon the proper application of the terms "parts" and "accessory," as it regards HTSUS 9506. In *Rollerblade*, the CAFC confirmed that in-line skating protective gear, such as knee pads, elbow pads and wrist guards, were classifiable under 9506.99.6080, HTSUS, the basket "Other" provision, and that the products did not qualify as "parts" or "accessories" to ice skates and roller skates in 9506.70.2090, HTSUS, because the items did not meet a number of factors. *See id.* at 1353-54.

However, regarding application of the term "accessory," the CAFC in *Rollerblade* recognized that "an 'accessory' must bear a direct relationship to the primary article that it accessorizes," and found that the protective gear in that case lacked "a direct relationship to the roller skates." *Id.* at 1352-53. The Court further noted that the protective gear did not "directly affect the skates' operation." *Id.* at 1353.

Riddell's football items clearly have a direct relationship to the article that they accessorize; namely, football pads. These items are designed and do in fact hold football pads in place. This is a direct relationship to football pads, articles which, when imported individually, are classified by CBP under HTSUS 9506.99.2000 based on Customs Ruling HQ 968013, March 3, 2006. In it, Customs classified football pad sets, consisting of two hip pads, one tail pad, two thigh pads and two knee pads, *i.e.*, the pads necessary to play interscholastic high school football under the NFHS Rules Book and the very pads Riddell's football items are specially designed to hold in place –under 9506.99.2000, HTSUS, as "protective pads for football." *Id.* This

acknowledgement by Customs that the pads, if imported independent of football pants, are sports

equipment under 9506.99.2000, HTSUS and the previously cited Customs Ruling N052472

which classified football pants with six "permanent protective pads of thick foam and hard

plastic" under 9506.99.2000, HTSUS, make it all the more incongruous if Riddell's football

items in issue are not similarly classified under 9506.99.2000.

As Customs has recognized that football pads are sports equipment, and applying the

*Rollerblade* criteria for "accessory" to Riddell's football pants, football girdles and football

jerseys, which hold in place hip pads, shoulder pads, etc., it is clear that the football pants in the

present case must qualify as "accessories" to football pads, because the items have a direct

relationship to the pads (the pants hold the pads), as detailed in *Rollerblade*.

*Rollerblade* also reviewed the meaning of the term "part", under HTSUS heading 9506.

The CAFC noted that "[a] 'part' is 'an essential element or constituent; integral portion, which

can be separated, replaced, etc.'" *Rollerblade, Inc.*, 282 F.3d at 1353 (citing Webster's New

World Dictionary 984 (3d College Ed. 1988)).  The Court further noted that the "term 'part,' like

the term 'accessory,' must have a direct relationship to the primary article, rather than to the

general activity in which the primary article is used." *Id.*  Riddell's football items can indeed be

separated from the football pads and can also be replaced, and do have a direct relationship to the

primary article, football pads, held in place to protect a football player.

*Rollerblade* listed "parts" criteria, as follows:

1. necessary to the efficient operation of the primary article
2. attached to or make contact in any way to the subheading article
3. does the primary article work in the same manner whether or not the user wears the part.

*See id.* at 1353-54.

Riddell's football items satisfy every one of the "parts" criteria. They are necessary for the primary article, the football pads, to work, as the pads utilize the football pants to be held in place. They attach to and make contact with the pads described in HTSUS subheading 9506.99.2000.  The primary article, the football pads, does not work "in the same manner" if the user does not wear the part.

## V.    CONCLUSION

For all the above reasons, we respectfully request that an order be entered granting plaintiff's motion for summary judgment, and granting plaintiff such other and further relief as may be just and appropriate.

Respectfully submitted,

/s/Scott Zarin

By:   Daniel J. Gluck
Christopher M. Kane
Robert D. DeCamp
Scott Zarin
1700 Broadway, 31st Floor
New York, New York
10019
Tel. 212-775-0055
Attorneys for Plaintiff

Dated: July 16th, 2012