UNITED STATES COURT OF INTERNATIONAL TRADE
BEFORE: HON. JUDITH M. BARZILAY, SENIOR JUDGE

| | | |
|---|---|---|
| RIDDELL, INC., | : | |
| Plaintiff, | : | Court No. 09-00416 |
| v. | : | |
| THE UNITED STATES, | : | |
| Defendant. | : | |

## JUDGMENT ORDER

Upon reading defendant's cross motion for summary judgment, upon consideration of the responses thereto, and upon consideration of other papers and proceedings had herein, it is hereby:

**ORDERED** that defendant's cross motion for summary judgment be, and hereby is, granted, sustaining the classification of the imported merchandise under subheadings 6212.20.00, HTSUS, 6114.30.30, HTSUS, and 6110.30.30, HTSUS, and it is further

**ORDERED** that plaintiff's motion for summary judgment be, and hereby is, denied, and it is further

**ORDERED** that this action be, and hereby is, dismissed.

_____
JUDGE

Dated:  New York, New York
        This        day of            , 2012

UNITED STATES COURT OF INTERNATIONAL TRADE
BEFORE: HON. JUDITH M. BARZILAY, SENIOR JUDGE

| | | |
|---|---|---|
| RIDDELL, INC., | : | |
| Plaintiff, | : | Court No. 09-00416 |
| | : | |
| v. | : | |
| | : | |
| THE UNITED STATES, | : | |
| Defendant. | : | |

## DEFENDANT'S CROSS MOTION FOR SUMMARY JUDGMENT

Pursuant to Rule 56 of the Rules of the United States Court of International Trade, defendant, the United States, hereby moves for an order granting defendant's cross motion for summary judgment sustaining the classification of the merchandise in issue, and dismissing this action. The bases for defendant's cross motion for summary judgment are set forth in the attached memorandum and Defendant's Statement of Undisputed Material Fact

WHEREFORE, defendant respectfully moves this Court to enter an order granting

defendant's cross motion for summary judgment in its entirety, and dismissing this action.

Respectfully submitted,

STUART F. DELERY
Acting Assistant Attorney General

By:     /s/ Barbara S. Williams
        BARBARA S. WILLIAMS
        Attorney in Charge
        International Trade Field Office

        /s/ Marcella Powell
        MARCELLA POWELL
        Civil Division, Dept. of Justice
*Of Counsel*:                           Commercial Litigation Branch
        Michael W. Heydrich              26 Federal Plaza, Room 346
        Office of Assistant Chief Counsel    New York, New York 10278
        International Trade Litigation   Attorneys for Defendant
        U.S. Customs and Border Protection    Tel. No. (212) 264-9230 or 1873

Dated: September 21, 2012

2

UNITED STATES COURT OF INTERNATIONAL TRADE
BEFORE: HON. JUDITH M. BARZILAY, SENIOR JUDGE

|  |  |  |
|---|---|---|
| RIDDELL, INC., | : | |
| Plaintiff, | : | Court No. 09-00416 |
| v. | : | |
| THE UNITED STATES, | : | |
| Defendant. | : | |

## DEFENDANT'S RESPONSE TO PLAINTIFF'S STATEMENT OF MATERIAL FACTS AS TO WHICH NO GENUINE ISSUE EXISTS

Pursuant to Rule 56 of the Rules of the United States Court of International Trade, defendant, the United States (Government), responds to Plaintiff's Statement of Material Facts as to Which No Genuine Issue Exists, as follows:

1. Admits.

2. Admits.

3. Admits.

4. Admits.

5. Admits.

6. Denies and avers that the country of origin for the two entries at issue in this consolidated case is the Philippines.

7. Denies and avers that the port of entry for the two entries at issue in this consolidated case is Chicago.

8. Admits.

9. Admits that the imported merchandise in this action was liquidated by U.S. Customs and Border Protection (Customs). Admits that the subject football pants in Entry No. 525-0725987-8 were classified by U.S. Customs under subheading 6203.43.40, HTSUS, with

Statistical Suffix 10 and that Customs liquidated the merchandise under Subheading 6203.43.40, HTSUS, dutiable at the rate of 27.9% *ad valorem*. Avers that Statistical Suffix 10 is not part of the statutory language. Denies that the statutory language for subheading 6203.43.40, HTSUS, is quoted accurately and avers that the provision is the best evidence of its contents. Admits that the subject football pants in Entry No. 988-0727325-9 were classified by Customs under subheading 6114.30.30, HTSUS, with Statistical Suffix 60 and that Customs liquidated the merchandise under subheading 6114.30.30, HTSUS, at a rate of 14.9% *ad valorem*. Avers that Statistical Suffix 60 is not part of the statutory language. Denies that the statutory language for subheading 6203.43.40, HTSUS, is quoted accurately and avers that the provision is the best evidence of its contents.

10.    Admits that the subject football girdles were classified by Customs under subheading 6207.19.90, HTSUS, with Statistical Suffix 10 and that Customs liquidated the merchandise under subheading 6207.19.90, HTSUS, dutiable at the rate of 10.5% *ad valorem*. Avers that Statistical Suffix 10 is not part of the statutory language. Denies that the statutory language for subheading 6207.19.90, HTSUS, is quoted accurately and avers that the provision is the best evidence of its contents.

11.    Admits that the subject football jerseys were classified by Customs under subheading 6110.30.30, HTSUS, with Statistical Suffix 53 and that Customs liquidated the merchandise under subheading 6110.30.30, HTSUS, dutiable at the rate of 32% *ad valorem*. Avers that Statistical Suffix 53 is not part of the statutory language. Denies that the statutory language for subheading 6110.30.30, HTSUS, is quoted accurately and avers that the provision is the best evidence of its contents.

12.    Admits that the subject football scrimmage vests were classified by Customs under subheading 6110.30.30, HTSUS, with Statistical Suffix 30 and that Customs liquidated the merchandise under subheading 6110.30.30, HTSUS, dutiable at the rate of 32% *ad valorem*. Avers that Statistical Suffix 30 is not part of the statutory language. Denies that the statutory language for subheading 6110.30.30, HTSUS, is quoted accurately and avers that the provision is the best evidence of its contents. Further denies that this statement concerns a material fact as plaintiff states in its Memorandum of Law in Support of Plaintiff's Motion for Summary Judgment on pages 7 and 13 that plaintiff will not continue to challenge Customs' classification of its scrimmage vests because they do not provide protection, nor are they specifically for use in football.

13.   Objection. This paragraph does not constitute a statement of material fact.

14.   Objection. This paragraph does not constitute a statement of material fact.

Respectfully submitted,

STUART F. DELERY
Acting Assistant Attorney General

By:   /s/ Barbara S. Williams
BARBARA S. WILLIAMS
Attorney in Charge
International Trade Field Office

/s/ Marcella Powell
MARCELLA POWELL
Civil Division, Dept. of Justice
Commercial Litigation Branch
26 Federal Plaza, Room 346
New York, New York 10278
Attorney for Defendant
Tel. No. (212) 264-9230 or 1873

*Of Counsel:*
Michael W. Heydrich
Office of Assistant Chief Counsel
International Trade Litigation
U.S. Customs and Border Protection

Dated: September 21, 2012

3

UNITED STATES COURT OF INTERNATIONAL TRADE
BEFORE: HON. JUDITH M. BARZILAY, SENIOR JUDGE

| | | |
|---|---|---|
| RIDDELL, INC., | : | |
| Plaintiff, | : | Court No. 09-00416 |
| v. | : | |
| THE UNITED STATES, | : | |
| Defendant. | : | |

## DEFENDANT'S STATEMENT OF UNDISPUTED MATERIAL FACTS

Rule 56(h), Rules of the United States Court of International Trade, requires that motions for summary judgment include a separate statement of material facts as to which it is contended that there exists no genuine issue to be tried. In this case, with respect to Defendant's Cross Motion for Summary Judgment, there are no material facts as to which there exists a genuine issue to be tried and the issues are amenable to resolution through dispositive motions. The pertinent undisputed facts of this case are as follows:

1.     In their condition as imported, the pants at issue do not have pads or padding. *See* Sample filed with Court.

2.     In their condition as imported, the jerseys at issue do not have padding. *See* Sample filed with Court.

3.     In their condition as imported, the girdle shells do not have padding. *See* Sample filed with Court.

4.     The jerseys at issue can be worn during games or practice. *See* Ex. 2, Skluzacek Dep. Tr. at 10:20-22.

5.     The entries at issue contain jerseys that are "youth" sizes. *See* Ex. 1, Entry Documents.

6.     The entries at issue contain jerseys that are "Adult" sizes. *See* Ex. 1, Entry Documents.

7.     The "Adult small" size jerseys are for "youth middle school." *See* Ex. 2, Skluzacek Dep. Tr. 8:9-19.

8.     "Youth normally goes up to, like 12 or 13 years old." *See* Ex. 3, Klepek Dep. Tr. 13:22-14:3.

9.     The practice pants at issue are usually sold to "youth teams." *See* Ex. 3, Klepek Dep. Tr. at 13:19-21.

10.    The entries at issue contain "game" and "practice" pants. *See* Ex. 1, Entry Documents.

11.    The jerseys at issue are made of polyester. *See* Ex. 2, Skluzacek Dep. Tr. at 11:11-13.

12.    Shoulder pads are worn underneath the jerseys at issue. *See* Ex. 2, Skluzacek Dep. Tr. at 12:9-18.

13.    The jerseys at issue hold the pads that are worn underneath in place. *See* Ex. 2, Skluzacek Dep. Tr. at 12:2-8.

14.    The entries at issue only contain pants that are "youth" sizes. *See* Ex. 1, Entry Documents.

15.    The pants at issue are made of polyester. *See* Sample filed with the Court.

16.    Thigh guards and knee pads are worn underneath the pants at issue. *See* Ex. 2, Skluzacek Dep. Tr. at 16:7-15.

2

17.     The pants are designed to protect because they hold the pads in place. *See* Ex. 2, Skluzacek Dep. Tr. at 15:21-24.

18.     The girdle shells are worn underneath the football pants. *See* Ex. 2, Skluzacek Dep. Tr. at 19:6-8.

19.     The girdle shells do not offer any protection without the pads. *See* Ex. 2, Skluzacek Dep. Tr. at 21:2-4.

20.     The girdle shells are made of polyester. *See* Sample filed with the Court.

21.     The pants at issue can be worn without the girdle. *See* Ex. 2, Skluzacek Dep. Tr. at 19:23-20:1-12.

22.     The NFHS rules do not require girdle shells to be worn. *See* Ex. 2, Skluzacek Dep. Tr. at 21:12-19.

23.     Customers insert pads after importation. *See* Ex. 2, Skluzacek Dep. Tr. at 67:23-68:5.

24.     The NFHS rules do not govern middle school football. *See* Pl.'s Ex. G, 2006 NFHS Football Rules Book at page 3.

25.     The NFHS "writes playing rules for varsity competition among student-athletes of high school age." *See* Pl.'s Ex. G, 2006 NFHS Football Rules Book at page 3.

26.     The NFHS rules "may be modified by any organization that chooses to use them." *See* Pl.'s Ex. G, 2006 NFHS Football Rules Book at page 3.

27.     The NFHS rules do not govern football practices. *See* Pl.'s Ex. G, 2006 NFHS Football Rules Book at page 3.

3

28.     "Members associations of the NFHS Independently make decisions regarding

compliance with or modification of these playing rules for the student-athletes in their respective

states." *See* Pl.'s Ex. G, 2006 NFHS Football Rules Book at page 3.

29.     Pads are not worn during "walkthrough practices." *See* Ex. 4, Plaintiff's

Responses to Defendant's First Set of Interrogatories and Request for Production of Documents

and Things.


                                Respectfully submitted,

                                STUART F. DELERY
                                Acting Assistant Attorney General

                         By:    /s/ Barbara S. Williams
                                BARBARA S. WILLIAMS
                                Attorney in Charge
                                International Trade Field Office

                                /s/ Marcella Powell
                                MARCELLA POWELL
                                Civil Division, Dept. of Justice
                                Commercial Litigation Branch
                                26 Federal Plaza, Room 346
                                New York, New York 10278
                                Attorney for Defendant
*Of Counsel:*                   Tel. No. (212) 264-9230 or 1873
        Michael W. Heydrich
        Office of Assistant Chief Counsel
        International Trade Litigation
        U.S. Customs and Border Protection

Dated: September 21, 2012

UNITED STATES COURT OF INTERNATIONAL TRADE
BEFORE: HON. JUDITH M. BARZILAY, SENIOR JUDGE

| | | |
|---|---|---|
| RIDDELL, INC., | : | |
| Plaintiff, | : | Court No. 09-00416 |
| | : | |
| v. | : | |
| | : | |
| THE UNITED STATES, | : | |
| | : | |
| Defendant. | : | |

## MEMORANDUM IN SUPPORT OF DEFENDANT'S CROSS MOTION FOR SUMMARY JUDGMENT AND IN OPPOSITION TO PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT

STUART F. DELERY
Acting Assistant Attorney General

BARBARA S. WILLIAMS
Attorney in Charge
International Trade Field Office

MARCELLA POWELL
Civil Division, Dept. of Justice
Commercial Litigation Branch
26 Federal Plaza, Room 346
New York, New York 10278
Attorneys for Plaintiff
Tel No. (212) 264-9230 or 1873

Of Counsel:
Michael W. Heydrich
Office of the Assistant Chief Counsel
International Trade Litigation
U.S. Customs and Border Protection

# TABLE OF CONTENTS

INTRODUCTION...................................................................................1

STATUTORY PROVISIONS AND EXPLANATORY NOTES............................3

QUESTION PRESENTED.........................................................................3

SUMMARY OF ARGUMENT....................................................................4

ARGUMENT.......................................................................................4

    I.    SUMMARY JUDGMENT FOR THE GOVERNMENT IS PROPER......4

    II.    THE MERCHANDISE AT ISSUE CANNOT BE CLASSIFIED IN
        HEADING 9506, HTSUS.........................................................6

        A.  GRIs 1 and 6 Govern The Classification Of The Merchandise At
            Issue..........................................................................5

        B.  The Imported Merchandise Does Not Meet The Definition Of "Sports
            Equipment" In Heading 9506, HTSUS.....................................7

            1.  Because Lemans Governs The Classification Of The Merchandise
                At Issue, Bauer Nike Is Not Applicable...............................9

    III.    THE IMPORTED MERCHANDISE IS PROPERLY CLASSIFIABLE IN
         CHAPTERS 61 AND 62, HTSUS, AS ARTICLES OF APPAREL.

        A.  The Imported Pants Are Properly Classifiable In Subheading
            6114.30.30, HTSUS, Or, Alternative In Subheading 6203.43.40,
            HTSUS.....................................................................14

        B.  The Imported Jerseys Are Properly Classifiable In Heading
            6110.30.30, HTSUS.....................................................15

        C.  The Imported Girdles Shells Are Properly Classifiable In Subheading
            6207.19.90, HTSUS, Or, Alternatively In Subheading 6212.20.00,
            HTSUS.....................................................................16

CONCLUSION...................................................................................19

# TABLE OF AUTHORITIES

**Cases**

Adickes v. S.H. Kress & Co.,
    398 U.S. 144 (1970)..................................................................5

Anderson v. Liberty Lobby, Inc.,
    477 U.S. 242 (1986)..................................................................5

Antonio Pompeo v. United States,
    40 Cust. Ct. 362, 366 C.D. 2006 (1958)...........................................13, 14

Bauerhin Technologies Ltd. Partnership v. United States,
    110 F.3d 774 (Fed. Cir. 1997).........................................................7

Bausch & Lomb, Inc. v. United States,
    148 F.3d 1363 (Fed. Cir. 1998)........................................................5

Brecht Corp. v. United States,
    25 CCPA 9 (1937), cert. den'd, 302 U.S. 719 (1937)..................................7

Brookside Veneers, Ltd. v. United States,
    847 F.2d 786 (Fed. Cir. 1988).......................................................16

Celotex Corp. v. Catrett,
    477 U.S. 317 (1986)...............................................................4, 5

Clarendon Marketing, Inc. v. United States,
    144 F.3d 1464 (Fed. Cir. 1998)........................................................5

E.M. Chemicals v. United States,
    920 F.2d 910 (Fed. Cir. 1990)......................................................15, 16

H.I.M./Fathom, Inc. v. United States,
    981 F. Supp. 2d 610 (CIT 1997).....................................................13, 14

James v. United States,
    48 CCPA 75 (1961)..................................................................15

Lemans Corp. v. United States,
    660 F.3d 1311 (Fed. Cir. 2011)..................................................*passim*

Libas, Ltd. v. United States,
    193 F.3d 1361 (Fed. Cir. 1999)........................................................8

Matsushita Elecs. Indus. Co. v. Zenith Radio Corp.,
    475 U.S. 574 (1986)..........................................................................5

Medline Industries, Inc. v. United States,
    62 F.3d 1407 (Fed. Cir. 1995)......................................................16

Mita Copystar Am. v. United States,
    160 F.3d 710 (Fed. Cir. 1998).....................................................6, 7

Orlando Food Corp. v. United States,
    140 F.3d 1437 (Fed. Cir. 1998).......................................................6

Park B. Smith v. United States,
    347 F.3d 922 (Fed. Cir. 2003).........................................................8

Pillowtex Corporation v. United States,
    171 F.3d 1370 (Fed. Cir. 1999).......................................................6

Pomeroy Collection, LTD. v. United States,
    Slip Op. 08-57 at 26 (CIT 2008)......................................................7

Simod America Corp. v. United States,
    872 F.2d 1572 (Fed. Cir. 1989).....................................................11

Toyota Motor Sales, U.S.A., Inc. v. United States,
    7 CIT 178, 182 (1984), aff'd, 753 F.2d 1061 (Fed. Cir. 1985).......................16

Trans-Border Custom Service v. United States,
    18 CIT 22 (1994), aff'd, 76 F.3d 354 (Fed. Cir. 1996)................................7

United States v. Carborundum,
    63 C.C.P.A. 98, 536 F.2d 373 (1976)................................................14

United States v. Clay Adams Co., Inc.,
    20 CCPA 285 (1932)....................................................................6

United States v. Esso Standard Oil Co.,
    42 CCPA 144 (1955)...................................................................15

United States v. Pan Pac. Textile Group Inc.,
    27 CIT 925, 276 F. Supp. 2d 1316 (2003)..........................................4, 5

**Statutes and Regulations**

Harmonized Tariff Schedule of the United States

GRI 1..............................................................................................6, 7

GRI 6.................................................................................................7

Section XI Note 1(t) (Note 1(t))................................................8

Chapter 61.............................................................4, 5, 7, 8, 12, 15

Subheading 6110.30.30......................................1, 3

Subheading 6114.30.30..............................1, 3, 15, 16

Chapter 62.............................................................4, 5, 7, 8, 12, 15

Subheading 6203.43.40......................................2, 17

Subheading 6207.19.90..............................3, 4, 18, 19

Subheading 9506.99.20......................................2, 3

Chapter 95............................................................................8

Heading 9506.............................................8, 9, 11, 12, 13, 14

**Miscellaneous**

USCIT Rule 56...............................................................................4

USCIT Rule 56(c)............................................................................4

Explanatory Note to GRI 1...............................................................6

Explanatory Note to heading 6110...................................................18

Explanatory Notes to heading 9506........................................8, 10, 12

11 James Wm. Moore *et al., Moore's Federal Practice* § 56.11[1][b] (3rd ed. 2006)......5

Webster's Ninth New Collegiate Dictionary (1991)............................18

http://www.merriam-webster.com/dictionary/garment.................................16

http://www.merriam-webster.com/dictionary/clothing......................................................16

http://www.merriam-webster.com/dictionary/pullover...............................................17, 18

http://www.merriam-webster.com/dictionary/sweater.....................................................17

http://www.merriam-webster.com/dictionary/trousers.....................................................17

http://www.merriam-webster.com/dictionary/undergarment............................................19

http://www.merriam-webster.com/dictionary/underpants................................................18

UNITED STATES COURT OF INTERNATIONAL TRADE
BEFORE: HON. JUDITH M. BARZILAY, SENIOR JUDGE

| | | |
|---|---|---|
| RIDDELL, INC., | : | |
| Plaintiff, | : | Court No. 09-00416 |
| v. | : | |
| THE UNITED STATES, | : | |
| Defendant. | : | |

### MEMORANDUM IN SUPPORT OF DEFENDANT'S CROSS MOTION FOR SUMMARY JUDGMENT AND IN OPPOSITION TO PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT

Defendant, the United States (Government), submits this memorandum in support of our cross motion for summary judgment requesting that this Court affirm the classification decision made by U.S. Customs and Border Protection (Customs) and dismissing this action, and in opposition to plaintiff's, Riddell, Inc.'s (Riddell), motion for summary judgment.

### INTRODUCTION

This is a matter that consolidated Court Nos. 07-00413 and 09-00416. Court No. 07-00413 involves one entry of "Youth" "Football Practice Pants" imported in July 2011. The pants are made of polyester and are imported without protective pads. The pants were liquidated in subheading 6114.30.30, HTSUS, which provides for "Other garments, knitted or crocheted: Of man-made fibers: Other" dutiable at 14.9% *ad valorem*.

Riddell filed protest no. 3901-06-101331 which challenged Customs' classification of the football practice pants and claimed that the proper classification of that merchandise is subheading 9506.99.20, HTSUS, which provides for "Articles and equipment for general

physical exercise, gymnastics, athletics, other sports (including table-table) or outdoor games, not specified or included elsewhere in this chapter; swimming pools and wading pools; parts and accessories thereof; Other; Other; Football, soccer and polo articles, except balls, and parts and accessories thereof" duty free.  Customs denied Riddell's protest.

Court No. 09-00416 involves one entry of football pants, football jerseys, football girdle shells, and football scrimmage vests[1] imported in August 2006.  The pants are "Youth" pants and are made of polyester and are imported without protective pads.  The pants were liquidated in subheading 6203.43.40, HTSUS, which provides for "Men's or boys' suits, ensembles, suit-type jackets, blazers, trousers, bib and brace overalls, breeches, and shorts (other than swimwear): Trousers, bib and brace overalls, breeches and shorts: Of synthetic fibers: Other: Other: Other: Other" dutiable at 27.9% *ad valorem*.

The jerseys are "Youth" and "Adult" sizes and are made up of polyester and are imported without pads.  The jerseys and scrimmage vests were liquidated in subheading 6110.30.30, HTSUS, as "Sweaters, pullovers, sweatshirts, waistcoats (vests) and similar articles, knitted or crocheted: Of man-made fibers: Other: Other: Other" dutiable at 32% *ad valorem*.

The girdle shells do not have pads and were liquidated in subheading 6207.19.90, HTSUS, as "Men's or boys' singlets and other undershirts, underpants, briefs, nightshirts, pajamas, bathrobes, dressing gowns and similar articles: Underpants and briefs: Of other textile materials: Other" dutiable at 10.5% *ad valorem*.

Riddell filed protest no. 3901-06-101331 which challenged Customs' classification of the merchandise and claimed that the proper classification of that merchandise is subheading

---

[1] Riddell has abandoned its claims with respect to the scrimmage vests. *See* Pl.'s Mem. at 13.

2

9506.99.20, HTSUS, which provides for "Articles and equipment for general physical exercise, gymnastics, athletics, other sports (including table-table) or outdoor games, not specified or included elsewhere in this chapter; swimming pools and wading pools; parts and accessories thereof; Other; Other; Football, soccer and polo articles, except balls, and parts and accessories thereof" duty free. Riddell made an alternative classification claim with respect to the pants claiming that they were properly classifiable in subheading 6114.30.30, HTSUS, which provides for "Other garments, knitted or crocheted: Of man-made fibers: Other" dutiable at 14.9% *ad valorem*. Riddell's also made an alternative claim with respect to the vests asserting that they were classifiable in subheading 9506.99.20, HTSUS, which provides for "Articles and equipment for general physical exercise, gymnastics, athletics, other sports (including table-table) or outdoor games, not specified or included elsewhere in this chapter; swimming pools and wading pools; parts and accessories thereof; Other; Other; Other" duty free. Customs denied Riddell's protest.

## STATUTORY PROVISIONS AND EXPLANATORY NOTES

The relevant statutory provisions and the corresponding Explanatory Notes are printed in the Addendum to this memorandum.

## QUESTION PRESENTED

Whether the subject merchandise is correctly classified in subheadings 6212.20.00, HTSUS, 6114.30.30, HTSUS, and 6110.30.30, HTSUS.

## SUMMARY OF ARGUMENT

The undisputed evidence in this case establishes that the merchandise at issue is apparel properly classifiable in Chapters 61 and 62, HTSUS. In their condition as imported, the pants, jerseys, and girdles are worn over the body, do not have any protective pads, and are made up of

3

100% man-made textiles. Those articles are simply apparel and nothing more. Therefore, summary judgment for the Government is appropriate.

## ARGUMENT

## I.   SUMMARY JUDGMENT FOR THE GOVERNMENT IS PROPER.

Under Rule 56 of the United States Court of International Trade (USCIT), summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." USCIT Rule 56(c); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986) (*Celotex*). In determining whether a genuine issue of fact exists, the court reviews the evidence submitted drawing all inferences against the moving party. *See United States v. Pan Pac. Textile Group Inc.*, 27 CIT 925, 927, 276 F. Supp. 2d 1316, 1319 (2003); *see also Matsushita Elecs. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). The movant bears the burden of demonstrating that there exists no genuine issue of material fact that would warrant a trial. *See, e.g., Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157 (1970). The movant may satisfy this burden by noting that the party who will bear the ultimate burden of proof at trial cannot support an essential element of its claim. *See, e.g., Celotex*, 477 U.S. at 322-23. The movant may also satisfy this burden by demonstrating that the "evidence supporting nonmovant's claim is sham evidence, weak evidence, or evidence insufficient as a matter of law." 11 James Wm. Moore *et al., Moore's Federal Practice* § 56.11[1][b] (3rd ed. 2006) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986) (scintilla of evidence insufficient to satisfy claimant's burden)).

This Court may resolve a classification issue by means of summary judgment. *See*

*Bausch & Lomb, Inc. v. United States*, 148 F.3d 1363, 1365 (Fed. Cir. 1998) (*Bausch & Lomb*).

Summary judgment is appropriate where the nature of the merchandise is not in question and the

sole issue before the court is the proper classification of the merchandise. *Bausch & Lomb*, 148

F.3d at 1365 ("summary judgment is appropriate when there is no genuine dispute as to the

underlying factual issue of exactly what the merchandise is.") (Citation omitted).  Thus, in the

absence of genuine factual issues, the propriety of the summary judgment turns on the proper

construction of the HTSUS, which is a question of law. *Clarendon Marketing, Inc. v. United

States*, 144 F.3d 1464, 1466 (Fed. Cir. 1998) (*Clarendon*).

As shown below, the undisputed evidence here establishes that the merchandise at issue

is properly classifiable in Chapters 61 and 62 because it is apparel.  Accordingly, the Court

should grant the Government's cross motion for summary judgment and deny Riddell's summary

judgment motion.

## II.    THE MERCHANDISE AT ISSUE CANNOT BE CLASSIFIED IN HEADING 9506, HTSUS.

### A.    GRIs 1 and 6 Govern The Classification Of The Merchandise At Issue.

Merchandise imported into the United States is classified under the HTSUS.  The tariff

classification of merchandise under the HTSUS is governed by the principles set forth in the GRI

and the Additional U.S. Rules of Interpretation (ARI). *See Orlando Food Corp. v. United States*,

140 F.3d 1437, 1439 (Fed. Cir. 1998) (*Orlando Food*).

Congress stated in GRI 1 that "for legal purposes, classification shall be determined

according to the terms of the headings and any relative section or chapter notes and, provided

such headings or notes do not otherwise require, according to the [remaining GRIs.]"  As

5

interpreted by its Explanatory Note, GRI 1 establishes that "the terms of the headings and any relative section or Chapter Notes are paramount, *i.e.*, they are the first consideration in determining classification." Thus, as this Court has stated, GRI 1 recognizes that the first step in analyzing a classification issue is to examine the terms of the provisions in issue in order to determine legislative intent. *See Pillowtex Corporation v. United States*, 171 F.3d 1370, 1373 (Fed. Cir. 1999); *Mita Copystar Am. v. United States*, 160 F.3d 710, 712 (Fed. Cir. 1998); *Orlando Food*, 140 F.3d at 1440. In that regard, GRI 1 is consistent with the master rule of tariff construction, which is to interpret statutes so as to carry out legislative intent, *United States v. Clay Adams Co., Inc.*, 20 CCPA 285 (1932), and all rules of construction must yield to that intent. *Brecht Corp. v. United States*, 25 CCPA 9 (1937), *cert. den'd*, 302 U.S. 719 (1937); *Trans-Border Custom Service v. United States*, 18 CIT 22, 25 (1994), *aff'd*, 76 F.3d 354 (Fed. Cir. 1996) (*Trans-Border*). Therefore, as the Federal Circuit has explained, "we begin our inquiry by examining the descriptions of the relevant headings, subheadings, and accompanying notes." *Bauerhin Technologies Ltd. Partnership v. United States*, 110 F.3d 774, 777 (Fed. Cir. 1997). "If, however, the proper classification is determined by reference to GRI 1, the court may not consider any subsequent GRI." *Conair*, Slip-op 2005-95, at 8, 2005 Ct. Int'l Trade LEXIS 104 (CIT Aug. 12, 2005) (citing *Mita Copystar Am. v. United States*, 160 F.3d 710, 712 (Fed. Cir. 1998)).

Under GRI 1, if an imported article is wholly encompassed by the terms of a single tariff provision, that is the appropriate tariff provision, and the Court need look no further to classify the product. *Pomeroy Collection, LTD. v. United States*, Slip Op. 08-57 at 26 (CIT 2008). GRI 6 governs the classification of merchandise within a subheading and requires the sequential reapplication of GRIs 1 through 5 to the particular subheadings under consideration. *See* GRI 6

6

("[C]lassification of goods in the subheading of a heading shall be determined according to the terms of those subheadings any related notes, mutatis mutandis, to the above rules.")

In this case, no analysis beyond GRIs 1 and 6 is needed because the imported merchandise is fully encompassed by the subheadings within Chapters 61 and 62, HTSUS.

### B.    The Imported Merchandise Does Not Meet The Definition Of "Sports Equipment" In Heading 9506, HTSUS.

Heading 9506, HTSUS, is the starting point for analyzing the classification of Riddell's merchandise because of the exclusionary note to HTSUS, Section XI. HTSUS, Section XI Note 1(t) (Note 1(t)), which includes HTSUS, Chapters 61 and 62, states that "[t]his section does not cover: Articles of chapter 95 (for example, toys, games, sports requisites and nets)." The Federal Circuit has explained that "Section and Chapter Notes are not optional interpretive rules, but are statutory law, codified at 19 U.S.C. § 1202." *Park B. Smith v. United States*, 347 F.3d 922, 926 (Fed. Cir. 2003) (citing *Libas, Ltd. v. United States*, 193 F.3d 1361, 1364 (Fed. Cir. 1999) (describing chapter notes as "statutory language" of the HTSUS)). Although there is a similar exclusionary note to HTSUS, Chapter 95, we will demonstrate below that the exclusionary note to HTSUS, Section XI does not apply to this case because the merchandise at issue is not classifiable in heading 9506, HTSUS. Therefore, the Note is not ever implicated here. Therefore, Riddell's pants, jerseys, and girdles are fully encompassed by the headings of HTSUS, Chapters 61 and 62, and are thus *prima facie* classifiable in HTSUS, Section XI.

Heading 9506, HTSUS, provides for "Articles and equipment for general physical exercise, gymnastics, athletics, other sports (including table-tennis) or outdoor games, not specified or included elsewhere in this chapter . . . ." The HTSUS does not provide a definition for the term "sports equipment" in heading 9506, HTSUS. However, the United States Court of

Appeals for the Federal Circuit (Federal Circuit) has recently defined "sports equipment" for purposes of heading 9506, HTSUS, as the following: "to qualify as equipment for a sport, the good should generally provide what is necessary, useful, or appropriate for the sport." *Lemans Corp. v. United States*, 660 F.3d 1311 (Fed. Cir. 2011) (*Lemans*). Relying on the Explanatory Notes to heading 9506, HTSUS, the Federal Circuit further refined its definition of "sports equipment" by holding that, to the extent "sports equipment" encompasses articles worn by a user, those articles are not apparel-like and are almost protective in nature. *Lemans*, 660 F.3d at 1319-20. "[A]ll of the listed examples in Section B [of the Explanatory Notes to heading 9506] center on non-clothing articles and do not describe apparel like the subject merchandise." *Id.*

Here, the undisputed evidence establishes the imported merchandise does not meet the *Lemans* definition of "sports equipment" in heading 9506, HTSUS. The imported pants, jerseys and girdles are made up of man-made or synthetic textiles and, in their condition as imported, do not have any protective pads within them. The pads, which are purchased separately, are inserted or snapped into the pants by Riddell's customers. As for the girdles shells, the pads are inserted by Riddell's customers; the girdle shells offer no protection without the pads. The jerseys do not have any inserts, snaps, or pockets for protective pads. In their condition as imported, which is without any protective padding, the pants, jerseys, and girdles shells are not protective in nature and are simply apparel.

Despite Lemans' clear definition of "sports equipment" for purposes of heading 9506, HTSUS, Riddell argues that *Bauer Nike* and *Lemans* must be read together in order to arrive at the classification of the merchandise at issue. Specifically, Riddell argues that *Bauer Nike* first requires a determination as to whether the articles at issue are "requisite." Then, according to Riddell, *Lemans* requires a determination as to whether the articles fall within the ordinary

8

meaning of the term "wearing apparel." Based on the foregoing proposed analysis, Riddell argues that the fact that the subject pants are "mandatory" articles pursuant to the rules of the National Federation of State High School Association (NFHS) and that the subject girdles provide "mandatory" protection pursuant to those rules, those articles are "mandatory equipment" or "requisite." Riddell further argues that the articles at issue are like the exemplars listed in the Explanatory Note to heading 9506, HTSUS, because they "are specifically designed to hold in place multiple types of padding that are not otherwise secured to a player without the pants, jerseys and girdles." *See* Pl's Mem. at 20-21. Riddell then concludes that the imported articles are not "wearing apparel and are properly classifiable in heading 9506, HTSUS." Riddell's arguments are incorrect because they are predicated on a misunderstanding of *Lemans* and misplaced reliance on *Bauer Nike*. Riddell's arguments are also not supported by the Explanatory Notes to heading 9506, HTSUS.

### 1. Because *Lemans* Governs The Classification Of The Merchandise At Issue, *Bauer Nike* Is Not Applicable.

*Lemans*, alone, defines "sports equipment" for purposes of heading 9506, HTSUS, and governs the classification of the merchandise at issue. In *Lemans*, the Federal Circuit made clear that *Bauer Nike* fell far short of defining the term "sports equipment" because it "did not address the extent to which the Explanatory Notes to Section 9506 clarified the meaning of the term "sports equipment..." Therefore, inasmuch as *Bauer Nike* did not provide a complete definition of the term "sports equipment," that decision is inapplicable to the issues in this case. Thus, Riddell cannot breathe new life into the *Bauer Nike* decision by arguing that it must be read in conjunction with *Lemans* or that it must be read as adding another requirement to *Lemans'* definition of "sports equipment." Any reliance on *Bauer Nike* here is misplaced.

9

Furthermore, even if the imported pants, jerseys, and girdle shells are "requisite" (which they are not)[2], they still do not fall within heading 9506, HTSUS. *Lemans* made it clear that the heading only covers articles that are not apparel-like, protective in nature, and have minimal textile components. The *Lemans* court stated:

> In this case, the Explanatory Notes to Section 9506 indicate that, to the extent "sports equipment" encompasses articles worn by a user, those articles are not apparel-like and are almost exclusively protective in nature. We agree with the CIT's conclusion that all of the listed examples in Subsection (B) "center on non-clothing articles and do not describe apparel like the subject merchandise." CIT Decision, at 1383-84.6 Example 13, which is the example arguably the closest to the subject merchandise, identifies "[p]rotective equipment for sports or games, *e.g.*, fencing masks and breast plates, elbow and knee pads, cricket pads, shin-guards." EN 95.06(B)(13).[1] Even that example, however, refers exclusively to items such as masks, plates, pads, and guards, and it does not reference articles that have more than minimal textile components.

*Lemans*, 660 F.3d at 1320.

It is well established that merchandise is classifiable in its condition as imported. In *Simod America Corp. v. United States*, 872 F.2d 1572, 1577 (Fed. Cir. 1989), the court stated:

> It is a principle of Customs law that imported merchandise is dutiable in its condition as imported . . . [W]hat is going to be done with it afterwards is not relevant. United States v. Citroen, 223 U.S. 407, 56 L. Ed. 486, 32 S. Ct. 259 (1912) . . . . the principle is so basic it hardly needs to be mentioned in any discussion of a classification problem by judges, officials, or lawyers having any serious involvement in such matters.

---

[2] Riddell contends that the imported merchandise is mandated by the NFHS rules. Riddell ignores the fact that all of the pants at issue and a large portion of the jerseys at issue are "Youth" sizes. According to Riddell, "Youth" sized pants are sold to "Youth teams" and "[y]outh normally goes up to, like, 12 or 13 years old." *See* Ex. 3, Klepek Dep. Tr. 13:22-14:3. The NFHS recommended rules only apply to high school athletics or activities.   Thus, to the extent that the merchandise at issue is "Youth" sized, for junior high/ middle school athletes, or for youth teams, the NFHS rules are not applicable.

Here, it is undisputed, in their condition as imported, the pants, jerseys, and girdles have more than just "minimal textile components" – those articles are 100% textile. They are imported without padding. The Explanatory Notes to heading 9506, HTSUS, does not contain a single exemplar that is worn on the body and is 100% textile. Accordingly, even if Riddell's imported articles are "requisite," they cannot be classified in heading 9506, HTSUS.

Riddell's contention that its pants, jerseys, and girdles are not wearing apparel is belied by *Lemans*. The fact that the articles at issue are specialized for the playing of football does not remove them from the scope of Chapter 61 and 62, HTSUS. The *Lemans* Court held that the headings and subheadings of Chapter 61 and 62 do not distinguish between apparel designed for general or specific uses, stating:

> The fact that articles are specialized or intended for specific purposes, such as for sports, does not alone remove them from the category of apparel. Indeed, Chapter 62 includes heading 6211 for "track suits, ski-suits and swimwear; other garments," which are, by their nature, items used in particular athletic activities. It is true, moreover, that "[v]irtually all wearing apparel is to a degree (often a high degree) designed and worn to provide comfort and protection, often for very specific situations." Daw Indus., Inc. v. United States, 714 F.2d 1140, 1143 (Fed. Cir. 1983).

*Lemans*, 660 F.3d at 1317.

Additionally, Riddell's "requisite" argument ignores the fact that in *Lemans*, the articles at issue were required to be worn by the American Motorcyclist Association (AMA)[3] for motorcycle and motorcross competition. In fact, in its brief, the *Lemans* plaintiff-appellant pointed out to the Federal Circuit that the AMA requires that amateur motorcycle and motorcross participants wear protective pants and jackets (or long-sleeve jerseys and shoulder pads in some events) in all AMA-sanctioned amateur and youth competition. *See* Ex. 6. Thus, to the extent

---

[3] The AMA 2005 Amatuer Rule Book was submitted as an exhibit in *Lemans*. *See* Ex. 6.

11

that articles at issue here are "requisite," *Lemans* establishes that it does not follow that they are classifiable in heading 9506, HTSUS, as "sports equipment."

Moreover, Riddell's reliance on *Antonio Pompeo v. United States*, 40 Cust. Ct. 362, 366 C.D. 2006 (1958), is entirely misplaced as that decision involved provisions of the Tariff Schedules of the United States, and not HTSUS provisions, and was consequently eschewed by this court in *H.I.M./Fathom, Inc. v. United States*, 981 F. Supp. 2d 610 (CIT 1997) (*H.I.M./Fathom*). In *H.I.M./Fathom* plaintiff argued that its wetsuits are not properly classified as garments because they are not personal attire, and that "wearing apparel" had been defined as articles worn for reasons of "decency, comfort and adornment," (citing *Antonio Pompeo v. United States*, 40 Cust. Ct. 362, 365 C.D. 2006 (1958)). Plaintiff further asserted that the wearing apparel category has been interpreted to exclude articles worn in a sport or occupation to protect against hazards of a game, sport or occupation. *Id.*

The court in *H.I.M./Fathom* consulted dictionary definitions and the Explanatory Notes and held that wetsuits made either of neoprene rubber or of textiles with a neoprene layer were not classifiable as sports equipment under heading 9506, HTSUS, even though the court found that "there is no doubt as to the design of wetsuits for use in the water-sport of scuba-diving." *H.I.M./Fathom*, 981 F. Supp. at 779. More significantly, like Riddell, the plaintiff cited to case law that predated the HTSUS, including *Antonio Pompeo*, supra, and *United States v. Carborundum*, 63 CCPA 98, 536 F.2d 373 (1976), in reference to which the court stated:

> Moreover, Fathom's recourse to case law decided under the TSUS regarding wearing apparel and the use test is unnecessary and incorrect. If, as here, the statutory language within the HTSUS is clear, it is unnecessary to apply TSUS terminology. <u>Amity Leather v. United States</u>, 20 C.I.T.[1] , 939 F. Supp. at 895. . . . Finally, the language of the HTSUS, in contrast to the TSUS, evidences statutory intent that articles are not classified within the garment

12

> provisions primarily based on use. While classification by use under certain sections of the HTSUS can be implied from the language of the headings, *see* <u>E.M. Chems. v. United States,</u> 20 C.I.T.[2] , 923 F. Supp. 202, 207 (1996) (citing <u>E.C. Lineiro v. United States,</u> 37 C.C.P.A. 10, 14, C.A.D. 411 (1949) (stating that classification by use may be appropriate for a particular HTSUS provision even where the words "use" or "used" are not stated in the language of such provision)), the garment provisions involved, Chapters 61 and 62, are not use provisions. In particular, these chapters do not expressly state that classification of articles under its provisions depends upon principal use, and the terms of the headings do not imply that the garment chapters are use provisions.

*H.I.M./Fathom,* 981 F. Supp. at 783.

Last, Riddell's attempt to analogize its imported pants with the ice-hockey pants at issue in *Bauer Nike* is unavailing. In their condition as imported, the *Bauer Nike* hockey pants were of a highly protective nature and incorporated hard plastic guards and thick pads. In contrast, in their condition as imported, the articles at issue here have absolutely no padding and thus are not highly protective in nature. Riddell's merchandise is not even as protective in nature as the motorcross apparel at issue in *Lemans,* which was held to be wearing apparel classifiable in Chapters 61 and 62, HTSUS. The motorcross jerseys had padded elbows for abrasion and shock impact. The weight of the pads constituted approximately ten percent of the entire weight of the jersey. The motorcross pants were made of heavy duty nylon that provided impact and abrasion protection. The weight of the pads was just less than fifty percent of the weight of the pants. The motorcross jackets were made of heavy duty materials such as heavyweight waxed cotton chassis, Dynax Nylon Chassis or knitted polyester mesh chassis, and contained molded rubber padding insert into the elbows and shoulders as well as back pads. *Lemans,* 660 F.3d at 1313-14.

13

## III.   THE IMPORTED MERCHANDISE IS PROPERLY CLASSIFIABLE IN CHAPTERS 61 AND 62, HTSUS, AS ARTICLES OF APPAREL.

### A.   The Imported Pants Are Properly Classifiable In Subheading 6114.30.30, HTSUS.

The proper subheading for the pants at issue is subheading 6114.30.30, HTSUS, which provides for "Other garments, knitted or crocheted: of man-made fibers: other, other: men's or boys."[4]   The HTSUS does not provide a definition for the term "garment."   Where a tariff term is not statutorily defined, *i.e.* "garments," statutory language is presumed to be used in its normal sense. *See United States v. Esso Standard Oil Co.*, 42 CCPA 144, 151 (1955); *James v. United States*, 48 CCPA 75 (1961).   Such terms are construed in accordance with their common and commercial meaning, which are presumed to be the same. *See E.M. Chemicals v. United States*, 920 F.2d 910, 913 (Fed. Cir. 1990) ("[t]ariff terms are to be construed in accordance with their common and popular meaning, in the absence of a contrary legislative intent."); *Toyota Motor Sales, U.S.A., Inc. v. United States*, 7 CIT 178, 182 (1984), *aff'd*, 753 2d 1061 (Fed. Cir. 1985).   The common meaning of a tariff term is a question of law that the court may answer by relying upon its own understanding of the term, and by consulting dictionaries, lexicons, scientific authorities, and other reliable sources as an aid. *Medline Industries, Inc. v. United States*, 62 F.3d 1407, 1409 (Fed. Cir. 1995).   In fact, "the meaning of a tariff term is presumed to be the same as its common or dictionary meaning." *Brookside Veneers, Ltd. v. United States*, 847 F.2d 786, 789 (Fed. Cir. 1988).   Therefore, inasmuch as the tariff term "garments" is not statutorily defined, the term's correct meaning is its common meaning.   The term "garments" is defined as "an article of clothing." *See* http://www.merriam-

---

[4] While we understand that some of the pants at issue were classified in subheading 6203.43.40, HTSUS, at liquidation, upon review of a sample of the pants, we believe that the more appropriate heading for all of the pants at issue is subheading 6114.30.30, HTSUS.

14

webster.com/dictionary/garment. *See also Lemans*, 660 F.3d 1314-15. The term "clothing"

means a "garments in general; also covering." *See* http://www.merriam-

webster.com/dictionary/clothing. *See also Lemans*, 660 F.3d 1314-15.

The undisputed evidence establishes that the imported pants fall squarely within

subheading 6114.30.30, HTSUS. The pants are "garments" because they cover the human body

and an individual wears the article of outer clothing at a particular time --when he plays the game

of football or practices football. Moreover, the pants are made of knitted polyester, which is a

man-made fiber. *See* Sample filed with the Court. Subheading 6114.30.30, HTSUS, is the

proper subheading for the pants at issue.

**B.**   **The Imported Jerseys Are Properly Classifiable In Heading 6110.30.30, HTSUS.**

The imported jerseys are properly classifiable in heading 6110.30.30, HTSUS, which

provides for "Sweaters, pullovers, sweatshirts, waistcoats (vests) and similar articles, knitted or

crocheted: Of man-made fibers: Other: Other: Other: Other: Other: Other." Because the

statutory terms "sweaters" and "pullovers" are not statutorily defined, they will be construed in

accordance with their common meaning. A "sweater" is defined as "a knitted or crocheted jacket

or pullover," (http://www.merriam-webster.com/dictionary/sweater) and a "pullover" is defined

as "a pullover garment" or "put on by being pulled over the head." *See* http://www.merriam-

webster.com/dictionary/pullover; Webster's Ninth New Collegiate Dictionary (1991). *See also*

*Lemans*, 660 F.3d at 1314-15. The Explanatory Note to heading 6110, HTSUS, provides

additional guidance as to the scope of that heading by stating that "[t]his heading covers a

category of knitted or crocheted articles, without distinction between male or female wear,

15

designed to cover the upper parts of the body (**jerseys, pullovers,** cardigans, waistcoats and similar articles) . . . ." (emphasis added).

Riddell's imported jerseys fit the criteria of subheading 6110.30.30, HTSUS, and possess the characteristics of the articles enumerated within the heading ("sweaters, pullovers..."). The jerseys are made from 100% polyester mesh and 100% polyester dazzle and the jerseys cover the human body at a particular time, *e.g.*, while engaged in playing football or practicing football. *See* Ex. 2, Skluzacek Dep. Tr. at 12:9-18; Sample filed with Court. Additionally, an individual must pull the jersey over his head to wear it. Accordingly, the imported jerseys are covered by the language of subheading 6110.30.30, HTSUS.

### C.     The Imported Girdles Shells Are Properly Classifiable In Subheading 6212.20.00, HTSUS.

Subheading 6212.20.00, HTSUS, provides for "brassieres, girdles, corsets, braces, suspenders, garters and similar articles and parts thereof, whether or not knitted or crocheted: girdles and panty-girdles: of man-made fibers."[5] The term "girdles" is not defined in the HTSUS and therefor will be construed in accordance with its common meaning. "Girdle" is defined as "2. an elasticized flexible undergarment worn over the hips and waist." *See* Ex. 7, Webster's III New Riverside University Dictionary (1984). The term is also defined as "2b Something which confines or binds in." *See* Ex. 7, Shorter Oxford English Dictionary on Historical Principles (6th ed. 2007). The girdle shells in this case fall squarely within the definition of the term "girdles."

---

[5] While we understand that the "girdle shells" at issue were classified in subheading 6207.19.90, HTSUS, at liquidation, upon review of a sample, we believe that subheading 6212.20.00, HTSUS, is the more appropriate heading. Due to the procedural posture of this case, we will not seek leave to assert a counterclaim for any increased duties that might be owed to Customs should the Court determine that subheading 6212.20.00, HTSUS, is the correct subheading for the "girdle shells."

The girdle shells, which are worn underneath the pants, are made of an elastic polyester material in that they are able to stretch and conform to the body holding the pads snugly in place.[6] *See* HQ 957469 (ruling that multisport girdle shells or compression shorts were properly classifiable in subheading 6212.20.00, HTSUS). Moreover, the fact that Riddell refers to these articles as "girdle" shells and advertises them as such in their catalogs is the best evidence that Riddell also believes they are "girdles." *See* Ex. 5, Catalog.

## IV. THE MERCHANDIE AT ISSUE ARE NOT CLASSIFIABLE AS "PARTS" OR "ACCESSORIES" OF "SPORTS EQUIPMENT" IN SUBHEADING 9506.99.20, HTSUS.

Riddell's final argument is that the merchandise at issue should be classified as "parts" or "accessories" of "sports equipment" because protective pads, which are presumably "sports equipment" of heading 9506, HTSUS, must be used with the football articles at issue. Riddell essentially argues that its imported pants, jerseys, and girdles are accessories to or are parts of the protective pads which are sold separately and worn with the imported merchandise during football games. Riddell's argument is incorrect for several reasons.

First, we have shown that the merchandise at issue is properly classifiable in Chapters 61 and 62, HTSUS. We have also shown that heading 9506, HTSUS, does not cover articles that are made up of more than "minimal textile components." The articles here are comprised of 100% textiles. Therefore, they cannot be classified in any provision of Chapter 95.

Second, Riddell's reliance on *Rollerblade Inc. v. United States*, 282 F.3d 1349 (Fed. Cir. 2002) (*Rollerblade*), is misplaced as that case is not applicable to the facts here. In *Rollerblade*, the Court defined "part" for purposes of tariff classification as "an essential element or constituent integral portion of the whole, but which can be separated, replaced, etc". Here, the

---

[6] The "girdle shells" may also be properly called compression shorts. *See* Ex. 8, Articles.

imported pants, jerseys, and girdle shells are whole articles in themselves. Therefore, there are no "parts" for the articles in issue.

Additionally, the fact that two articles are designed and constructed to be used together, does not necessarily make either a part of the other. *See United States v. Willoughby Camera Store, Inc.*, 21 C.C.P.A. 322, T.D. 46851 (1933). Where an "article performs its separate function without loss of any of its essential characteristics," and whether separate or joined, is "complete in itself," that article is a "distinct and separate commercial entity" and not a "part." *See ABB, Inc. v. United States*, 421 F.3d 1274, 1277 (Fed. Cir. 2005). *See also United States v. Pompeo, 43 C.C.P.A. 9 (1955).* Here, in their condition as imported, the pants, jerseys, and girdle shells perform their separate primary function of covering the body, as with all apparel or garments. The imported articles are also distinct and separate commercial entities. *See Ex. A*, Entry Documents and Ex. 5, Catalog. Therefore, the merchandise at issue cannot be classified as "parts" of pads or "sports equipment" in heading 9506, HTSUS.

18

## CONCLUSION

For all the foregoing reasons, we respectfully request that judgment be entered granting the Government's cross motion for summary judgment, denying plaintiff's motion for summary judgment, and dismissing this action.

Respectfully submitted,

STUART F. DELERY
Acting Assistant Attorney General

/s/ Barbara S. Williams
BARBARA S. WILLIAMS
Attorney in Charge
International Trade Field Office

Of Counsel:

/s/ Marcella Powell
MARCELLA POWELL
Michael W. Heydrich                         Civil Division, Dept. of Justice
Office of the Assistant Chief Counsel        Commercial Litigation Branch
International Trade Litigation               26 Federal Plaza, Room 346
U.S. Customs and Border Protection          New York, New York 10278
                                            Attorneys for Defendant
Dated: September 21, 2012                    Tel No. (212) 264-9230

19